IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| STEVE URVAN and<br>TVP INVESTMENTS, LLC,<br><br>    Plaintiffs,<br><br>v.<br><br>TVP VENTURES, LLC; TRITON VALUE PARTNERS OPPORTUNITY FUND I, L.P.; TRITON OPPORTUNITY FUND MANAGER, LLC; TVP VENTURES FUND MANAGER, LLC; TVP VENTURES I, L.P; TRITON HOLDINGS INTERNATIONAL, INC.; TRITON ACCERATOR FUND, LLC; TRITON OPPORTUNITY PLEDGE FUND; and TRITON BUSINESS DEVELOPMENT SERVICES, INC. n/k/a TRITON VALUE PARTNERS, LLC,<br><br>    Defendants. | CIVIL ACTION FILE<br><br>NO. 1:20-cv-153-TCB |

## **O R D E R**

This case comes before the Court on Defendants' motion [75] to dismiss, motion [74] for a more definite statement, and motion [34] to stay.

## I.   Background

Plaintiffs Steve Urvan and TVP Investments, LLC ("TVPI") allege the following, which the Court accepts as true for purposes of this order. In 2006, Urvan became acquainted with Defendants TVP Ventures, LLC ("Ventures"); Triton Value Partners Opportunity Fund I, L.P. ("Opportunity Fund"); Triton Opportunity Fund Manager, LLC; TVP Ventures Fund Manager, LLC; TVP Ventures I, LP; Triton Holdings International, Inc.; Triton Accelerator Fund, LLC; Triton Opportunity Pledge Fund; and Triton Business Development Services, Inc. now known as Triton Value Partners, LLC. These nine entities are legally registered as separate corporate or partnership entities but operate as a single business and are effectively alter egos of each other.

In 2006, Defendants represented that they could raise capital for Urvan's business entities and provide services including management

2

consulting advice, corporate governance, deal structure advice, and general investment advice. Urvan and Defendants entered into a management consulting agreement whereby Urvan compensated Defendants for their advice.

As part of the agreement, Defendants introduced Urvan to some of their portfolio companies as possible investment opportunities. Defendants developed relationships with these portfolio companies by co-sponsoring a venture capital investment and entrepreneurship competition at Emory University's Goizueta Business School. They provided investment advice to these companies and would often connect them with one another. From 2006 to 2009, Urvan became involved with several of Defendants' portfolio companies.

Though the amended complaint is not a model of clarity, Plaintiffs allege that Defendants had undisclosed conflicts of interest that tainted the investment advice they provided to Urvan. For instance, Urvan invested $100,000 in Simtrol, Inc. at Defendants' recommendation, but Defendants did not disclose that Simtrol was managed by two employees of Triton Value Partners. After TVPI was formed in January

2009, it loaned Simtrol $250,000 as part of a master promissory note and eventually acquired 66,600 shares of the company's stock at Defendants' advice.

Urvan also invested $100,000 as a bridge loan in Exchange Boulevard after Defendants provided him with a financial forecast of the company. Defendants had invested $175,000 in the company, and one of Defendants' employees served as its CEO. Exchange Boulevard failed to repay Urvan's loan, and as a result, Urvan acquired 220,000 penalty shares of stock in the company. Defendants also received penalty shares. As Exchange Boulevard neared bankruptcy, Defendants continued to provide investment advice to Urvan regarding the company.

Plaintiffs also allege other improprieties. For example, Urvan invested $150,000 in an organization called Alumni Capital Network as part of an initial capital call; however, Defendants failed to inform him of a second capital call. When Urvan failed to satisfy the second capital call, his initial investment was reduced to $75,000 without his knowledge. Further, Defendants had encouraged Urvan to invest in

4

Defendant Opportunity Fund—which invested in Alumni Capital Network—rather than invest directly in Alumni Capital Network. When Alumni Capital Network wound down in 2015 and returned invested capital to its limited partners, it returned $75,000 to Opportunity Fund, but Defendants never returned that investment to Urvan.

In another instance, in 2008 Defendants valued 30,000 shares of stock that Urvan owned in iTui Telecom, one of Defendants' new portfolio companies. They then "undertook to retain custody" of the stock on behalf of Urvan pursuant to a single stock certificate under a common name for all of Defendants' clients who had invested in iTui. [67] ¶ 40. Plaintiffs allege that Defendants did not disclose to Urvan their separate business relationships with and investments in iTui.

In October 2010, TVPI and sixteen other investors executed subscription agreements and purchased participating interests in a master convertible promissory note, which was issued by ARC Holdings, Inc. and of which Defendant Ventures assumed the role of agent and attorney-in-fact for each of the participating investors. Plaintiffs aver

that Defendants did not disclose Ventures' role or its relationship with ARC Holdings to TVPI. They also contend that Ventures has violated its agency duties by retaining cash proceeds and stock from ARC Holdings that belong to TVPI pursuant to the terms of the promissory note.

Finally, Plaintiffs aver that as a result of pending litigation in Cobb County Superior Court, Ventures has a disabling conflict of interest with TVPI that should preclude it from acting as TVPI's agent or attorney-in-fact. Plaintiffs contend that upon the filing of the litigation, TVP Ventures became obligated to resign as agent or to take steps to mitigate the conflict of interest, which it has not done.

## A.   Cobb County Case[1]

On December 13, 2017, Triton Value Partners, LLC and its three principals, Don Gasgarth, Paul Freischlag, and Jeffrey Zwitter, filed suit in Fulton County, Georgia. The case has since been transferred to

---

[1] Any details regarding the Cobb County case not included in the amended complaint are not considered for purposes of Defendants' motion to dismiss.

6

Cobb County Superior Court ("Cobb County Case"). Gasgarth, Freischlag, and Zwitter are also the principals of Ventures.

In the Cobb County Case, the plaintiffs sued Urvan and TVPI—the two Plaintiffs in this action—and several affiliated entities. The action arises out of an agreement by Urvan on behalf of TVPI to compensate the plaintiffs with a ten-percent interest in TVPI for their years of providing valuable services to TVPI and its entities. The operative complaint brings contract-based and equitable causes of action against Urvan and TVPI.

Urvan and TVPI have pled the following counterclaims[2] in the Cobb County Case: (1) recoupment against all plaintiffs; (2) violations of Georgia securities law and securities fraud against the individual plaintiffs; (3) common law conversion against the individual plaintiffs; (4) common law fraud against all plaintiffs; (5) Georgia civil RICO violations against all plaintiffs; (6) common law breach of fiduciary

---

[2] TVPI filed its original counterclaims on February 26, 2018. Urvan filed his on April 27 and at the same time amended TVPI's counterclaims. Both parties amended the counterclaims on September 13, 2018 and again on April 7, 2020.

duties against the individual plaintiffs; and (7) a judicial declaration to avoid indemnity obligations.

Essentially, Urvan and TVPI complain that while serving as officers and directors of TVPI, Gasgarth, Zwitter, and Freischlag used their entity Triton Value Partners (and other affiliated entities and partners) to work on third-party transactions with Urvan's and TVPI's money without compensating Urvan or TVPI.

Due to the COVID-19 pandemic and a joint motion to extend the deadlines, the parties' deadline for fact witness discovery was December 1, 2020; the deadline for expert discovery is June 1, 2021; and the pre-trial order is due August 1.

## B.  Federal Case

On January 10, 2020, Plaintiffs filed this action. After Defendants filed a motion to dismiss for failure to state a claim and a motion to stay pursuant to the *Colorado River* doctrine, the Court granted [66] Plaintiffs leave to amend their complaint and deferred ruling on the motion to stay.

On September 10, Plaintiffs filed their amended complaint, which asserts claims for (1) violations of § 203 of the Investment Advisers Act of 1940 ("IAA"); (2) violations of § 206 of the IAA; (3) violations of § 15(a)(1) of the Securities Exchange Act of 1934 ("Exchange Act"); (4) violations of § 15(c)(1) of the Exchange Act; (5) violations of the Investment Company Act of 1940 ("ICA"); (6) violations of § 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder; (7) violations of §§ 10-5-34 and -32 of the Georgia Uniform Securities Act ("GUSA");[3] (8) violations of § 10-5-51 of the GUSA; (9) violations of § 10-5-30 of the GUSA; (10) violations of § 10-5-50 of the GUSA; (11) breach of fiduciary duty; (12) conversion; and (13) equitable accounting.

Defendants move to dismiss all claims pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.    Legal Standards

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint provide "a short and plain statement of the claim showing that the

---

[3] Plaintiffs cite the Georgia Securities Act, which has been repealed and replaced by the Georgia Uniform Securities Act of 2008, O.C.G.A. §§ 10-5-1 to -90 (2009) (effective July 1, 2009).

pleader is entitled to relief[.]" This pleading standard does not require "detailed factual allegations," but it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Chandler v. Sec'y of Fla. Dep't of Transp.*, 695 F.3d 1194, 1199 (11th Cir. 2012). The Supreme Court has explained this standard as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.

*Iqbal*, 556 U.S. at 678 (citation omitted); *see also Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1324–25 (11th Cir. 2012).

Thus, a claim will survive a motion to dismiss only if the factual allegations in the complaint are "enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555–56 (citations

10

omitted). "[A] formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (citation omitted). Although all well-pleaded facts must be accepted as true and construed in the light most favorable to the plaintiff, *Powell v. Thomas*, 643 F.3d 1300, 1302 (11th Cir. 2011), the Court need not accept as true the plaintiff's legal conclusions, including those couched as factual allegations, *Iqbal*, 556 U.S. at 678.

## A.    Rule 9(b)

In addition to these generally applicable pleading standards, Rule 9(b) requires that a party alleging fraud or mistake "state with particularity the circumstances constituting fraud or mistake," though scienter may be pled generally. This rule serves the dual purpose of ensuring that a complaint "alert[] defendants to the 'precise misconduct with which they are charged' and protecting defendants against spurious charges of immoral and fraudulent behavior." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (quoting *Durham v. Bus. Mgmt. Assocs.*, 847 F.2d 1505, 1511 (11th Cir. 1988)).

To satisfy Rule 9(b), a complaint must plead "such matters as the time, place and contents of false representations, as well as the identity

11

of the person making the misrepresentation and what was obtained or given up thereby." *WESI, LLC v. Compass Env't, Inc.*, 509 F. Supp. 2d 1353, 1358 (N.D. Ga. 2007) (quoting *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 549–50 (8th Cir. 1997)) (further explaining that Rule 9(b) "requires plaintiffs in a fraud case to specify the who, what, where, when, why and how of the alleged fraud").

Significantly, however, "[t]he application of Rule 9(b) . . . 'must not abrogate the concept of notice pleading,'" and thus that rule must be read in conjunction with the requirements of Rule 8. *Ziemba*, 256 F.3d at 1202 (quoting *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997)). And "when 'specific factual information [about the fraud] is peculiarly within the defendant's knowledge or control,'" the particularity requirement of Rule 9(b) "may be applied less stringently . . . ." *Hill v. Morehouse Med. Assocs., Inc.*, No. 02-14429, 2003 WL 22019936, at *3 (11th Cir. Aug. 15, 2003) (per curiam) (quoting *United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Blue Cross Blue Shield of Ga., Inc.*, 755 F. Supp.

12

1040, 1052 (S.D. Ga.), *reconsideration granted*, 755 F. Supp. 1055, 1058–59 (S.D. Ga. 1990)).

### B. Private Securities Litigation Reform Act

Further, the Private Securities Litigation Reform Act ("PSLRA") alters Rule 9(b)'s particularity requirement for securities-fraud actions where the plaintiff alleges that the defendant made a false statement of material fact or omitted a material fact necessary to make the statement not misleading. 15 U.S.C. § 78u-4(b)(1). In such a case,

> the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.

*Id.*

Moreover, while Rule 9(b) permits scienter to be pled generally, the PSLRA imposes a higher standard: the plaintiff in a securities-fraud case must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.* § 78u-4(b)(2).

13

## III.  Discussion

As a threshold matter, Plaintiffs' amended complaint is, in essence, a shotgun complaint in that with each new count, Plaintiffs adopt the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint.

Also, Plaintiffs assert each claim against all Defendants as a group without specifying which Defendants are responsible for which acts or omissions, which Defendants provided investment advice and recommendations, and which Defendants owed fiduciary duties. Plaintiffs defend this pleading tactic by arguing that because Defendants were actually operating as a single business enterprise, they should be treated as such at this stage.

### A.    Counts I & II: Violations of §§ 203 and 206 of the IAA

In Count I, Plaintiffs allege that Defendants were required but failed to properly register as an investment adviser pursuant to § 203 of the IAA. 15 U.S.C. § 80b-3(a).

14

In Count II, Plaintiffs allege that Defendants failed to comply with § 206(2)–(4) of the IAA. *Id.* § 80b-6. They complain that Defendants violated § 206 by failing to properly register as an investment adviser, disclose the conflicts of interest that affected their investment advice, and mitigate those conflicts of interest. They seek to rescind their investment advisory contractual relationship with Defendants and all transactions incident thereto.

Defendants move to dismiss both counts, contending that the amended complaint (1) seeks relief beyond the IAA's limited remedy, and (2) omits facts supporting the existence of an investment adviser-client relationship or an investment contract. They also move to dismiss Count II on the grounds that the claim fails to meet the heightened pleading standards required by Rule 9(b) and the PSLRA and fails to adequately plead the requisite mental state for each alleged violation.

The Court will first address together Defendants' common arguments as why these two counts should be dismissed. It will then consider Defendants' additional arguments as to why Count II should be dismissed.

### 1.    Private Right of Action

Section 215 of the IAA provides that contracts whose formation or performance violates the IAA or that would continue any relationship or practice in violation of the IAA are void. 15 U.S.C. § 80b-15. The Supreme Court has held that this provision creates a "limited private remedy under the Investment Advisers Act of 1940 to void an investment advisers contract." *Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 24 (1979). Plaintiffs argue that this right of action extends to contracts entered into in violation of §§ 203 and 206 of the IAA.

Though *Transamerica*'s holding does not allow for a private right of action *for damages* for violations of § 206, *id.* at 20, it provides a right of action for the rescission of a contract whose formation or performance violates "any provision" of the IAA. 15 U.S.C. § 80b-15; *see also Kahn v. Kohlberg, Kravis, Roberts & Co.*, 970 F.2d 1030, 1036 (2d Cir. 1992) ("A § 215 claim may be premised upon a violation of any provision of the IAA.").

16

Accordingly, the Court finds that there exists a limited private remedy under the IAA for violations of §§ 203 and 206 to void an investment advisory contract. *See, e.g., Living Benefits Asset Mgmt., LLC v. Kestrel Aircraft Co.*, 916 F.3d 528, 532–33 (5th Cir. 2019) ("A contract made in violation of the IAA is void as to the unregistered adviser." (citations omitted)); *Mohebbi v. Khazen*, 50 F. Supp. 3d 1234, 1253 (N.D. Cal. 2014) (finding that the remedy for failure to register in violation of § 203 is rescission of the underlying investment agreement (citing *Transamerica Mortg. Advisors, Inc.*, 444 U.S. at 24)); *Graham v. Cypress Cap. Grp., Inc.*, No. 10-81269-CIV, 2011 WL 13227744, at *2 (S.D. Fla. July 12, 2011) (permitting the plaintiffs to seek rescission under § 215 for a violation of § 206 of the IAA); *Shahidi v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 2:02-cv-483FTM29S, 2003 WL 21488228, at *2 (M.D. Fla. Apr. 28, 2003) (same).

However, *Transamerica* limits the private remedy under the IAA to voiding an investment advisers contract and clarifies that the IAA "confers no other private causes of action, legal or equitable." 444 U.S. at 24. The right is one of "specific and limited relief." *Id.* at 18. It is not

17

clear to the Court what Plaintiffs mean when they request to rescind a

"contractual relationship" and "all transactions incident thereto." [67]

¶¶ 65, 73. To the extent that this relief is broader than the rescission of

any investment advisers contracts, the claims will be dismissed.

### 2.     Investment Adviser

Next, Defendants contend that Counts I and II should be

dismissed because Plaintiffs have failed to allege facts to support the

existence of an adviser-client relationship. They argue that the

amended complaint does not sufficiently plead that Defendants

qualified as an investment adviser or that the parties entered into an

investment advisers contract.

> The IAA defines an investment adviser as
>
> any person who, for compensation, engages in the business
> of advising others, either directly or through publications or
> writings, as to the value of securities or as to the advisability
> of investing in, purchasing, or selling securities, or who, for
> compensation and as part of a regular business, issues or
> promulgates analyses or reports concerning securities . . . .

15 U.S.C. § 80b-2(a)(11); *see also United States v. Elliott*, 63 F.3d 1304,

1310 (11th Cir. 1995).

The amended complaint avers that Plaintiffs compensated Defendants for providing "general investment advice." [67] ¶ 20. It also avers that Defendants would send "notices" to clients regarding opportunities to invest in portfolio companies and would "prepare and share projections" regarding these opportunities as part of their marketing efforts. *Id.* ¶ 24.

For example, Defendants allegedly presented to Urvan a "Five-Year Financial Forecast" and PowerPoint presentation regarding the Exchange Boulevard investment opportunity, and they encouraged Plaintiffs to invest in Simtrol and Alumni Capital Network. *Id.* ¶ 25. The amended complaint also avers that TVPI acquired shares of Simtrol stock based on Defendants' advice and that on information and belief, Defendants advised Urvan to acquire shares of iTui stock, which they then valuated for Urvan.

The Court finds that the amended complaint has pled sufficient facts to show that Defendants qualified as an investment adviser: Defendants were in the business of providing investment advice regarding securities to clients, including Plaintiffs, and were

19

compensated for it. *See Lowe v. S.E.C.*, 472 U.S. 181, 208 (1985) (explaining that the IAA's "central purpose" applies to persons offering "individualized advice attuned to any specific portfolio or to any client's particular needs"). Moreover, "[t]he exercise of control over what purchases and sales are made with investors' funds is considered to be investment advice for purposes of the [IAA]." *United States v. Ogale*, 378 F. App'x 959, 960 (11th Cir. 2010) (per curiam) (citing *Elliott*, 62 F.3d at 1310; *Abrahamson v. Fleschner*, 568 F.2d 862, 871 (2d Cir. 1977)). Here, Defendants allegedly solicited capital from Urvan for their Opportunity Fund and controlled how those funds were invested.[4]

Finally, the existence of an investment advisers contract between the parties is a "prerequisite for liability under the IAA." *Graham*, 2011 WL 13227760, at *3 (citing *Neely v. Bar Harbor Bankshares*, 270 F.

---

[4] Defendants assert that the absence of pleaded facts as to their investment adviser status deprives the Court of the ability to evaluate whether a registration exemption applies. However, Defendants do not argue for the application of any specific exemption. Moreover, Plaintiffs contend that the IAA's registration exemptions should be treated like the Securities Act of 1933 registration exemptions, which courts treat as affirmative defenses and not as prima facie elements of a failure to register claim. *See, e.g.*, *Doran v. Petroleum Mgmt. Corp.*, 545 F.2d 893, 899 (5th Cir. 1977). Defendants offer no argument in reply, and the Court is inclined to agree with Plaintiffs' reasoning at this stage. The same is true for Defendants' arguments that they do not qualify as a broker-dealer under the Exchange Act.

Supp. 2d 44, 49 (D. Maine 2003)). Taking the alleged facts as true, the Court finds that the amended complaint plausibly alleges the existence of an investment advisers contract. Plaintiffs aver that in 2006 Defendants entered into an agreement with Urvan under which they provided investment advice in exchange for compensation.

For the foregoing reasons, Defendants' motion to dismiss Count I will be denied, with the exception that any additional relief sought beyond the rescission of investment advisers contracts is subject to dismissal. The Court will next consider Defendants' remaining arguments as to why Count II should be dismissed.

### 3.    Pleading § 206 with Particularity

Section 206 provides that it shall be unlawful for any investment adviser

> (2) to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or prospective client;
>
> (3) acting as principal for his own account, knowingly to sell any security to or purchase any security from a client, or acting as broker for a person other than such client, knowingly to effect any sale or purchase of any security for the account of such client, without disclosing to such client in writing before the completion of such transaction the

21

>   capacity in which he is acting and obtaining the consent of
>   the client to such transaction . . . .; or
>
>   (4) to engage in any act, practice, or course of business which
>   is fraudulent, deceptive, or manipulative.

15 U.S.C. § 80b-6(2)–(4).

To establish violations of § 206(2) and § 206(4), Plaintiffs must show that Defendants made a false or misleading statement or omission. *ZPR Inv. Mgmt. Inc. v. SEC*, 861 F.3d 1239, 1247–48 (11th Cir. 2017) (citing *SEC v. Cap. Gains Rsch. Bureau, Inc.*, 375 U.S. 180, 200–01 (1963); *Steadman v. SEC*, 603 F.2d 1126, 1129–34 (5th Cir. 1979) (*Steadman I*), *aff'd*, 450 U.S. 91 (1981)); *see also SEC v. Mannion*, 789 F. Supp. 2d 1321, 1340 (N.D. Ga. 2011).

Defendants argue that Plaintiffs' averments of false or misleading misrepresentations or omissions do not satisfy Rule 9(b)'s particularity threshold because they do not specifically "who, what, where, when, why" of each fraudulent omission or statement and they improperly group the Defendants together. Plaintiffs respond that because the PSLRA did not amend the IAA and because the § 206 claims sound in

22

negligence and not fraud, heightened pleading requirements do not apply.

This Court has evaluated whether claims pursuant to § 206 sounding in fraud satisfy Rule 9(b)'s heightened standard. *See SEC v. Conrad*, No. 1:16-cv-2572-LMM, 2017 WL 3485766, at *11 (N.D. Ga. Feb. 22, 2017) (applying Rule 9(b) where the complaint averred that a defendant defrauded investors by misusing fund assets to benefit himself and his family and by engaging in fraudulent redemption practices).

However, other courts have declined to apply Rule 9(b) to a § 206 claim where the claim did not require evidence of fraud. This is because § 206 "is not simply an anti-fraud measure," and allegations pursuant to § 206 may depend instead on showing a breach of fiduciary duty. *Norman v. Salomon Smith Barney, Inc.*, 350 F. Supp. 2d 382, 391 (S.D.N.Y. 2004) (explaining that the IAA's purpose is broader than that of fraud measures like § 10b of the Exchange Act and that it can be more properly analogized to § 11 of the Exchange Act, which is directed

at misrepresentations and omissions but does not require evidence of fraud).

The Supreme Court has explained that because an investment adviser acts as a fiduciary to clients, the adviser has "an affirmative duty of utmost good faith, and full and fair disclosure of all material facts, as well as an affirmative obligation to employ reasonable care to avoid misleading his clients." *Cap. Gains Rsch. Bureau, Inc.*, 375 U.S. at 194 (internal quotations omitted) (finding that though there is no enumerated duty to disclose in the IAA, an investment adviser can violate the IAA by failing to disclose material information); *see also Transamerica Mortg. Advisors, Inc.*, 444 U.S. at 17 (finding that § 206 "establishes federal fiduciary standards to govern the conduct of investment advisers" (internal quotations and citation omitted)). "The high standards of business morality exacted by our laws regulating the securities industry do not permit an investment adviser to trade on the market effect of his own recommendations without fully and fairly revealing his personal interests in these recommendations to his clients." *Cap. Gains Rsch. Bureau, Inc.*, 375 U.S. at 201.

24

In *Norman*, the district court declined to apply Rule 9(b)'s heightened pleading standard for fraud to the plaintiff's IAA claim because the "claim [did] not rest in fraud, but rather in breaches, through omission, of the broad regime of fiduciary duty between investment advisors and their clients created by the IAA" and clarified by the Supreme Court. *Norman*, 350 F. Supp. 2d at 391 (also finding it relevant that certain IAA violations do not require a showing of intent or scienter).

Because the law is not settled on this question, and because Plaintiffs' averments under § 206 rest on alleged breaches of the heightened statutory fiduciary standards under the IAA, the Court will not require Plaintiffs to plead their § 206 claim with particularity.[5]

### 4. Culpable Mental State

Sections 206(2) and 206(4) require the plaintiff to show only that the investment adviser acted negligently; they do not require scienter. *ZPR*, 861 F.3d at 1247 (citing *Steadman I*, 603 F.2d at 1129–34; *SEC v.*

---

[5] As the Court will find with respect to Plaintiffs' federal securities-fraud claims, were the Court to find that Plaintiffs' § 206 claim sounds in fraud, it would fail to satisfy Rule 9(b)'s pleading standards.

*Steadman*, 967 F.2d 636, 643, 647 (D.C. Cir. 1992) (*Steadman II*)).

Section 206(3) on the other hand prohibits an investment adviser from

"knowingly" effecting certain principal and agency transactions. 15

U.S.C. § 80b-6(3).

Defendants argue that Plaintiffs have not satisfactorily pled the

requite mental state for each alleged violation of § 206. Plaintiffs

respond that Count II alleges violations only of § 206(2) and § 206(4)

and thus sounds only in negligence. They neglect to mention that the

amended complaint specifically alleges violations of § 206(3) through

Defendants' omissions and in connection with transactions involving

ARC Holdings and Simtrol. [67] ¶¶ 70–71.[6]

### a.    Subsections 206(2) and 206(4)

"Negligence requires a showing that the investment adviser failed

to exercise 'reasonable care.'" *ZPR*, 861 F.3d at 1254 (citing *Cap. Gains*

*Rsch. Bureau, Inc.*, 375 U.S. at 194). With respect to omitted

---

[6] In Count II, Plaintiffs also allege that Defendants "engaged in a device, scheme or artifice to fraud [sic]," appearing to cite § 206(1). 15 U.S.C. § 80b-6(1). Although the count explicitly alleges only violations of § 206(2)–(4), to the extent Plaintiffs also allege a violation of § 206(1), the claim will be dismissed for failure to adequately plead scienter. *See ZPR*, 861 F.3d at 1254 (explaining that § 206(1) requires a showing of scienter (citing *Steadman I*, 603 F.2d at 1134)).

disclosures, negligence can be shown only if the disclosures were material. *Steadman II*, 967 F.2d at 643.

"An 'omitted fact is material if there is a substantial likelihood that a reasonable [investor] would consider it important.'" *ZPR*, 861 F.3d at 1248–49 (quoting *Basic Inc. v. Levinson*, 485 U.S. 224, 231 (1988)). "[T]here must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Id.* at 1249 (quoting *Basic Inc.*, 485 U.S. at 231–32).

"The trier of fact usually decides the issue of materiality." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1189 (11th Cir. 2002) (citing *Cooperman v. Individual, Inc.*, 171 F.3d 43, 48–49 (1st Cir. 1999)). "Only if the lack of importance of the omission is so plain that reasonable minds cannot differ thereabout is it proper for the court to pronounce the omission immaterial as a matter of law." *Id.* (citing *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 161–64 (2d Cir. 2000); *Cooperman*, 171 F.3d at 49).

Plaintiffs have failed to plausibly allege that Defendants acted negligently in failing to disclose their lack of registration or the full extent of their relationships with the portfolio companies. Plaintiffs repeatedly aver that Defendants' conflicts of interest tainted their investment advice and created a financial incentive for them to take actions designed to help the portfolio companies survive. But Plaintiffs have not attempted to allege how Defendants did not operate in their best interests: Plaintiffs sought Defendants' advice on potential investment opportunities and presumably also hoped for the success of those opportunities. Indeed, Plaintiffs state that as a result of their alleged misconduct, "Defendants received benefits that were unrelated to Plaintiffs' best interest." [79] at 26. The Court does not equate receiving benefits *unrelated* to Plaintiffs' best interest with not operating in Plaintiffs' best interest or having materially adverse interests.

Plaintiffs do not allege that had they known of Defendants' lack of registration or conflicts of interest, their decision-making would have been significantly altered. Nor do they allege that in failing to disclose

or mitigate their conflicts of interest, Defendants provided incomplete or inaccurate reports of the portfolio companies' financials, engaged in self-dealing, traded on the effect of their own recommendations, or otherwise took positions detrimental to Plaintiffs. *See, e.g., Cap. Gains Rsch. Bureau, Inc.*, 375 U.S. at 196–97 (finding that the IAA requires disclosure of an adviser's practice of secretly trading on the effect of his own investment recommendations because of the potential for abuse but declining to decide whether it requires disclosure when investment advisers trade for their own account in the same securities in which their clients are interested); *ZPR*, 861 F.3d at 1254 (finding that an adviser failed to act with reasonable care when he falsely reported that a company was not under SEC investigation); *SEC v. Conrad*, 354 F. Supp. 3d 1330, 1352 (N.D. Ga. 2019) (finding a dispute of fact as to the materiality of a conflict of interest where the adviser did not disclose that he had appointed himself sub-manager of a fund and began giving himself additional fees).

The amended complaint is devoid of allegations showing that Defendants acted negligently or without reasonable care. Accordingly,

29

the claims for violations of § 206(2) and § 206(4) of the IAA will be dismissed.

### b. Subsection 206(3)

Neither have Plaintiffs sufficiently alleged that without written notice and consent, Defendants knowingly (1) sold or purchased any security from Plaintiffs while acting as a principal for their own account, or (2) sold or purchased any security for one of Plaintiffs' accounts while acting as a broker for someone other than Plaintiffs. 15 U.S.C. § 80b-206(3). Other than averring that Defendants violated § 206(3) in connection with transactions involving ARC Holdings and Simtrol, Plaintiffs do not aver how Defendants violated the provision, nor that they did so knowingly. Indeed, Plaintiffs broadly cite the entire factual allegation portion of their amended complaint as evidence of a violation of § 206(3).

Accordingly, the remaining claims in Count II for violations of § 206(3) of the IAA will also be dismissed.

### B.    Count V: Violations of the ICA

Because the elements of Counts III, IV, and VI and Defendants'

arguments relating thereto are intertwined, the Court will first consider

whether Plaintiffs have sufficiently pled its ICA claim in Count V.

In Count V, Plaintiffs allege that Defendants committed "multiple

violations" of the ICA, 25 U.S.C. §§ 80a-1 to -64, and they seek to

rescind their investments in Defendants' funds pursuant to § 47(b) of

the ICA. [67] ¶ 91. Defendants respond that the claim's generalized

allegations do not state a claim for relief and omit facts showing that

Defendants qualify as a statutory investment company.

The Court need not consider Defendants' argument as to whether

they qualify as an investment company because Plaintiffs' averments

fail to state a claim. Plaintiffs do not bother to identify which of the

"multiple provisions" of the ICA Defendants allegedly violated or how

they did so. [67] ¶ 89. Nor do they identify specific factual allegations in

the amended complaint that support the cause of action, instead

averring in conclusory fashion that Defendants violated the act "in

connection with creating, marketing and issuing the Opportunity Fund, the Accelerator Fund and the Pledge Fund." *Id.*[7]

The amended complaint's conclusory allegations are insufficient to give Defendants fair notice of the grounds on which the claim rests. *Twombly*, 550 U.S. at 555. Accordingly, Plaintiffs have failed to state a plausible claim for relief, and Count V will be dismissed.

## C. Counts III & IV: § 15(a)(1) and (c)(1) of the Exchange Act Threshold Requirements

The Court will next consider the two arguments that Defendants raise as to why Count III should be dismissed. Defendants raise the same arguments regarding Count IV.

In Count III, Plaintiffs allege that Defendants were required but failed to register as a statutory broker-dealer pursuant to § 15(a)(1) of the Exchange Act. 15 U.S.C. § 78o(a)(1). In Count IV, Plaintiffs allege that Defendants violated § 15(c)(1)(A) of the Exchange Act by effecting securities transactions that were fraudulent, deceptive, and manipulative. *Id.* § 78o(c)(1)(A). Plaintiffs seek the same relief for both

---

[7] Notably, Plaintiffs admit that they did not know what purpose Defendants Accelerator Fund or Pledge Fund serve. *See* [67] ¶¶ 12–13.

claims: the right to rescind all securities transactions involving

Defendants, and the rescission of investments in Exchange Boulevard,

Simtrol, and Alumni Capital Network.[8]

Defendants argue for dismissal on the grounds that (1) § 15(a)(1)

and (c)(1) lack an express private right of action; and (2) the amended

complaint omits facts supporting how Defendants qualified as a broker-

dealer under the statute.

### 1.    Private Right of Action

Section 29(b) of the Exchange Act provides that contracts made in

violation of its provisions are void. 15 U.S.C § 78cc(b). The Supreme

Court has held that § 29(b) renders contracts made in violation of the

Act or a provision thereunder "voidable at the option of the innocent

party." *Mills v. Electric Auto-Life Co.*, 396 U.S. 375, 387 (1970); *see also*

*Transamerica Mort. Advisors, Inc.*, 444 U.S. at 19 (recognizing that

§ 29(b) of the Exchange Act "confers a 'right to rescind' a contract void

under the criteria of the statute" (quoting *id.* at 388)); *Demaria v.*

---

[8] Plaintiffs reserve their right to rescind their investments in iTui, and they affirm their investment in ARC Holdings.

*Gisbex Clearing Corp.*, S.A., No. 10-20426-CIV, 2010 WL 11553316, at
*6 (S.D. Fla. Nov. 23, 2010) (explaining that while there is no private
action for damages under § 15(a)(1) or (c)(1), under § 29(b) a party may
seek to rescind an agreement made or performed in violation of the Act
(citing *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 205 (3d Cir.
2006); *Reg'l Props., Inc. v. Fin. & Real Est. Consulting Co.*, 678 F.2d
552, 560 (5th Cir. 1982))).

Accordingly, Plaintiffs are permitted to seek rescission of
contracts entered into or performed in violation of § 15(a)(1) or (c)(1) of
the Exchange Act.

## 2.   Broker-Dealer

A violation of § 15(a)(1) or (c)(1)(A) depends on Defendants'
qualifying as a broker-dealer within the meaning of the Exchange Act.
The Act defines a broker as "any person engaged in the business of
effecting transactions in securities for the account of others." 15 U.S.C.
§ 78c(a)(4)(A). It defines a dealer as "any person engaged in the
business of buying and selling securities . . . for such person's own
account through a broker or otherwise." *Id.* § 78c(a)(5)(A).

Courts look to an array of factors to determine whether someone is engaged in the business of effecting transactions as a broker. A "primary" indicium is regular participation in securities transactions. *SEC v. Kenton Cap., Ltd.*, 69 F. Supp. 2d 1, 12–13 (D.D.C. 1998) (citing *SEC v. Margolin*, No. 92 Civ. 6307, 1992 WL 279735, at *5 (S.D.N.Y. Sept. 30, 1992)); *see also SEC v. Almagarby*, 479 F. Supp. 3d 1266, 1272 (S.D. Fla. 2020). The Exchange Act defines a security to include an investment contract. 15 U.S.C. § 78c(a)(10).

Courts also consider factors such as whether the person (1) actively solicits or recruits investors; (2) advises investors on the merits of an investment or evaluates the merits of an investment; (3) receives commission or transaction-based compensation for selling investments; (4) handles investor funds or is involved in negotiations between the issuer and investor; and (5) is employed by the issuer. *SEC v. Hansen*, No. 83-cv-3692, 1984 WL 2413, at *10 (S.D.N.Y. Apr. 6, 1984) (citing N. Wolfson, R. Phillips & T. Russo, *Regulation of Brokers, Dealers and Securities Market*s, § 1.06 (1st ed. 1977)); *see also SEC v. Collyard*, 861 F.3d 760, 766 (8th Cir. 2017).

These factors are non-exclusive and are evaluated based on the totality of the circumstances. *SEC v. Feng*, 935 F.3d 721, 731–32 (9th Cir. 2019) (citing *Collyard*, 861 F.3d at 766); *SEC v. Kramer*, 778 F. Supp. 2d 1320, 1334–35 (M.D. Fla. 2011) (pointing out that some factors such as transaction-based compensation and regularity of participation are more indicative of broker conduct than others such as recommending investments).

At this stage in the litigation, Plaintiffs have plausibly pled that Defendants engaged in several of the actions that courts consider when evaluating someone's status as a broker. The amended complaint avers that Defendants regularly participated in securities transactions involving investment contracts,[9] actively identified and solicited investors for their portfolio companies, advised investors like Urvan on the merits of multiple investment opportunities, and controlled investor funds by operating the Opportunity Fund. *See SEC v. Jordan*, No. 1:02-cv-2191-JTC, 2005 WL 8154251, at *7 (N.D. Ga. Sept. 20, 2005) (finding the defendant was a broker within the meaning of the Act where he

---

[9] *See* Section III(D)(1), *infra.*

36

directed the sales of investments, provided investment advice through sales materials, maintained a network of financial advisers, and was compensated depending on the number of investments sold).

The Court finds it concerning that the amended complaint does not attempt to specify which Defendant was acting as a broker for which Plaintiff. *See Demaria*, 2010 WL 11553316, at *6 (dismissing the plaintiffs' § 29(b) claim in part because they did not identify which defendant they were in contractual privity with). But given the early stage of the litigation and in light of Plaintiffs' allegations that Defendants were operating as a single business entity, the Court does not find this to be fatal to the amended complaint.

Accordingly, Defendants' motion to dismiss Count III will be denied. The Court now turns to Defendants' remaining objections to Count IV and their objections to Count VI.

### D.   Counts IV & VI: Violations of §§ 15(c)(1) and 10(b) of the Exchange Act

In addition to bringing a fraud claim pursuant to § 15(c)(1)(A), Plaintiffs allege that Defendants committed fraud in violation of § 10(b) of the Exchange Act and Rule 10b-5 by failing to disclose that they were

not properly registered and by failing to disclose or mitigate conflicts of interest. They allege that these omissions were material and misleading and accordingly seek damages.

Section 15(c)(1)(A) of the Exchange Act prohibits a broker or dealer from using any manipulative, deceptive, or other fraudulent device to effect a securities transaction or to induce or attempt to induce the purchase or sale of any security. 15 U.S.C. § 78o(c)(1)(A). Section 10(b) and Rule 10b-5 make it unlawful for an individual to employ a manipulative or deceptive device in connection with the purchase or sale of any security. *Id.* § 78j(b); 17 C.F.R. § 240.10b-5.

The elements of a § 15(c)(1) claim are the same as a § 10(b) claim. *SEC v. Morgan Keegan & Co.*, 678 F.3d 1233, 1244 (11th Cir. 2012) (citing *SEC v. George*, 426 F.3d 786, 792 (6th Cir. 2005)). To state a securities-fraud claim under these provisions, a plaintiff must allege "(1) a material misrepresentation or materially misleading omission, (2) in connection with the purchase or sale of a security, (3) made with scienter." *Id.* (citing *SEC v. Merch. Cap., LLC*, 483 F.3d 747, 766 (11th Cir. 2007)).

38

The PSLRA also requires a plaintiff in a private enforcement action to allege justifiable reliance on the misstatement or omission, economic loss, and "a causal connection between the material misrepresentation or omission and the loss, commonly called 'loss causation.'" *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1236–37 (11th Cir. 2008) (citing *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341–42 (2005)); 15 U.S.C. § 78u-4(b)(4).

Defendants argue that Plaintiffs' §§ 15(c)(1) and 10(b) claims should be dismissed because Plaintiffs fail to adequately allege conduct in connection with the purchase or sale of securities, a materially misleading omission, a "strong inference" of scienter, and loss causation.

### 1. In Connection with Securities

To state a claim under §§15(c)(1) or 10(b), the plaintiff must show that the false or misleading statement was made in connection with the purchase or sale of a security.

Under § 3(a)(10) of the Exchange Act, "security" is defined to include, inter alia, any "investment contract." 15 U.S.C. § 78c(a)(10). The Supreme Court defines an "investment contract" as "a contract,

transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party." *SEC v. W.J. Howey Co.*, 328 U.S. 293, 298–99 (1946). The Eleventh Circuit has distilled from *W.J. Howey* a three-part test for an investment contract, requiring: "(1) an investment of money, (2) a common enterprise, and (3) the expectation of profits to be derived solely from the efforts of others." *SEC v. Unique Fin. Concepts, Inc.*, 196 F.3d 1195, 1199 (11th Cir. 1999) (quoting *Villeneuve v. Advanced Bus. Concepts Corp.*, 698 F.2d 1121, 1124 (11th Cir. 1983), *aff'd en banc*, 730 F.2d 1403 (11th Cir. 1984)).

Plaintiffs have sufficiently pled the first element. One or both Plaintiffs invested capital into the portfolio companies or purchased stock or other interests issued by the entities with the expectation of sharing in the earnings and profits. *W.J. Howey Co.*, 328 U.S. at 300.

Moreover, Plaintiffs invested this capital "depend[ing] upon the expertise or efforts of the investment promoter for their returns." *SEC v. ETS Payphones, Inc.*, 408 F.3d 727, 732 (11th Cir. 2005) (citation omitted) (defining the common enterprise element); *see also Eberhardt*

*v. Waters*, 901 F.2d 1578, 1580–81 (11th Cir. 1990) ("The thrust of the common enterprise test is that the investors have no desire to perform the chores necessary for a return, and are attracted to the investment solely by the prospects of a return." (citing *SEC v. Koscot Interplanetary, Inc.*, 497 F.2d 473, 478 (5th Cir. 1974))).

Finally, Plaintiffs retained little control over their investments, relying on the managerial efforts of others for the success of the enterprises. *ETS Payphones, Inc.*, 408 F.3d at 732 ("The more control investors retain, the less likely it becomes that the contract qualifies as a security."); *Koscot Interplanetary, Inc.*, 497 F.2d at 483 (explaining that the critical inquiry for the third element is whether "those essential managerial efforts which affect the failure or success of the enterprise" are made by those other than the investors (quoting *SEC v. Glenn W. Turner Enters., Inc.*, 474 F.2d 476, 482 (9th Cir. 1973))).

Accordingly, the amended complaint adequately pleads that Plaintiffs are purchasers of securities and that Defendants' alleged misconduct was in connection with the purchase or sale of securities. However, Plaintiffs have not pled that each Plaintiff was involved in

41

each investment contract. Instead, they have pled that Urvan invested in Exchange Boulevard, Simtrol, Alumni Capital Network, and iTui, and that TVPI invested in Simtrol and ARC Holdings. Thus, Urvan's §§ 15(c)(1) and 10(b) claims will be dismissed with prejudice as to transactions involving ARC Holdings, and TVP Investment's §§ 15(c)(1) and 10(b) claims will be dismissed with prejudice as to transactions involving Exchange Boulevard, Alumni Capital Network, and iTui.

### 2.    Material Misrepresentation or Omission

To show a violation of §§ 15(c)(1) or 10(b), Plaintiffs must allege that Defendants made a material misrepresentation or materially misleading omission. Defendants contend that the amended complaint does not sufficiently plead that the alleged omissions were materially misleading, nor does it plead fraud with the particularity required by the PSLRA and Rule 9(b).

"Rule 10b-5 prohibits not only literally false statements, but also any omissions of material fact 'necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.'" *FindWhat Inv. Grp. v. FindWhat.com*, 658 F.3d

1282, 1305 (11th Cir. 2011) (quoting 17 C.F.R. § 240.10b-5(b)). A statement is misleading if "in the light of the facts existing at the time of the [statement] . . . [a] reasonable investor, in exercise of due care, would have been misled by it." *Id.* (citing *SEC v. Tex. Gulf Sulphur Co.*, 401 F.2d 833, 863 (2d Cir. 1968)).

Notably, Rule 10b-5 "is not read literally. Instead, a defendant's omission to state a material fact is proscribed only when the defendant has a duty to disclose." *Rudolph v. Arthur Andersen & Co.*, 800 F.2d 1040, 1043 (11th Cir. 1986). "By voluntarily revealing one fact about its operations, a duty arises for the [defendant] to disclose such other facts, if any, as are necessary to ensure that what was revealed is not 'so incomplete as to mislead.'" *FindWhat Inv. Grp.*, 658 F.3d at 1305 (quoting *Backman v. Polaroid Corp.*, 910 F.2d 10, 16 (1st Cir. 1990) (en banc)).

"[W]hen considering a motion to dismiss a securities-fraud action, a court shouldn't grant unless the alleged misrepresentations . . . are 'so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance.'" *Carvelli v. Ocwen*

43

*Fin. Corp.,* 934 F.3d 1307, 1320–21 (11th Cir. 2019) (quoting *Ganino v. Citizens Util. Co.*, 228 F.3d 154, 162 (2d Cir. 2000)) (affirming the district court's dismissal of securities-fraud claims).

Moreover, Plaintiffs' claims are subject to the heightened pleading standards of Rule 9(b) and the PSLRA. To satisfy these requirements, the amended complaint "must '*precisely*' identify each allegedly misleading statement—its content, when and where it was made, and who was responsible for making it." *Damian v. Montgomery Cnty. Bankshares, Inc.*, 981 F. Supp. 2d 1368, 1376 (N.D. Ga. 2013) (citing 15 U.S.C. § 78u-4(b)(1); *FindWhat Inv. Grp.*, 658 F.3d at 1296).

The amended complaint must also specify why the statement is misleading, how it misled the plaintiffs, and what the defendants gained as a result of making the false or misleading statement or omission. *Id.* (citing 15 U.S.C. § 78u-4(b)(1); *FindWhat Inv. Grp.*, 658 F.3d at 1296); *see also Carvelli,* 934 F.3d at 1318 (explaining that Rule 9(b) "requires a plaintiff to allege specifically "(1) which statements or omissions were made in which documents or oral representations; (2) when, where, and by whom the statements were made (or, in the case of

44

omissions, not made); (3) the content of the statements or omissions and how they were misleading; and (4) what the defendant received as a result of the fraud." (citing *FindWhat Inv. Grp.*, 658 F.3d at 1296)).

Defendants contend that Plaintiffs have failed to allege that any omissions were materially misleading. In the amended complaint and in Plaintiffs' brief in opposition to Defendants' motion, Plaintiffs assert in a conclusory fashion that Defendants' omissions of material facts were misleading without alleging or explaining how they were materially misleading.

As discussed with respect to Plaintiffs' IAA § 206 claim, Plaintiffs have failed to allege that Defendants' omissions regarding their registration status and conflicts of interest would have "significantly altered the 'total mix' of information" such that they were material. *Morgan Keegan & Co.*, 678 F.3d at 1245 (quoting *Basic*, 485 U.S. at 231–32); *see also Carvelli*, 934 F.3d at 1317.

Nor have Plaintiffs sufficiently alleged that Defendants had a duty to disclose to make statements already made not misleading. *Carvelli*, 934 F.3d at 1318 (holding that the plaintiff failed to allege any

actionable omission because "nothing that Ocwen failed to disclose rendered already-disclosed information misleading in context" (citing *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011))).

Plaintiffs aver that Urvan sought Defendants' investment advice and their skills at providing corporate governance, raising capital, and identifying investors for his business entities. That Defendants were at the same time providing governance, raising capital, and recruiting investors (including Urvan) for other companies with whom they had relationships would be reasonably expected. Indeed, the amended complaint avers that Urvan received notices and financial projections as part of "cross-marketing efforts," suggesting that Defendants were engaging in the same marketing efforts for Urvan's business. [67] ¶ 24. The amended complaint simply does not allege how Defendants' non-disclosures as to their registration or relationships with the other companies made their investment advice misleading in the context of the facts available to a reasonable investor at the time. *Carvelli*, 934 F.3d at 1318; *Morgan Keegan & Co.*, 678 F.3d at 1248.

Plaintiffs' allegations of fraud are also due to be dismissed for their failure to satisfy Rule 9(b) and the PSLRA's heightened pleading requirements.

The first alleged omission—that Defendants failed to disclose that they were not properly registered—does not satisfy Rule 9(b). Nowhere do Plaintiffs allege what Defendants obtained as a result of this omission. Nor do Plaintiffs attempt to identify the person responsible for not making the disclosure.

Next, Plaintiffs aver that Defendants' failure to disclose or otherwise mitigate their conflicts of interest constituted fraud. Again, Plaintiffs have failed to allege anywhere in the amended complaint the person responsible for the failure to disclose these conflicts of interest or how Defendants benefitted from the nondisclosure. Nor are Plaintiffs clear as to how Defendants' relationships with the other businesses created conflicts of interest. Plaintiffs are attempting to package their breach of fiduciary duties claim as fraud claims without pleading fraud with particularity, which the Court will not permit. *In re Equifax Inc. Sec. Litig.*, 357 F. Supp. 3d 1189, 1217 (N.D. Ga. 2019) ("[A] plaintiff

who alleges mere . . . breach of fiduciary duty does not state a claim under section 10(b).").

Finally, Plaintiffs' averments regarding Defendants' alleged conflicts of interest with the Exchange Boulevard and iTui transactions are made on information and belief, but Plaintiffs have not provided sufficient supporting facts showing the basis of their belief. 15 U.S.C. § 78u-4(b)(1) (requiring that where allegations are made on "information and belief," the complaint "state with particularity all facts on which that belief is formed"); *Damian*, 981 F. Supp. at 1378 (clarifying that to satisfy § 78u-4(b)(1) a plaintiff "need only plead with particularity *sufficient* facts to support" allegations based on information and belief (quoting *In re Theragenics Corp. Sec. Litig.*, 105 F. Supp. 2d 1342, 1355 (N.D. Ga. 2000))).

With respect to the alleged materially misleading omissions, that Plaintiffs generally ascribe the wrongful conduct to a nonspecific group of Defendants does not warrant dismissal at this stage.

Generally under Rule 9(b), plaintiffs "must allege facts with respect to each defendant's participation in the fraud." *Am. Dental Ass'n*

*v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010) (citing *Brooks*, 116

F.3d at 1381). However, the "group-pleading doctrine" permits a

plaintiff to create a "presumption of group responsibility for statements

and omissions in order to satisfy the particularity requirements for

pleading fraud under Federal Rule of Civil Procedure 9(b)." *Phillips v.*

*Sci.-Atlanta, Inc.*, 374 F.3d 1015, 1018 (11th Cir. 2004). Because the

Eleventh Circuit has not yet determined the viability of the group-

pleading doctrine after the enactment of the PSLRA, *id.*, the Court will

not abrogate it here. However, as discussed in the following section,

Plaintiffs' group-pleading is fatal to their allegations of scienter.

### 3.    Scienter

Even if the Court were to find that Plaintiffs have plausibly and

particularly alleged materially misleading omissions, their securities-

fraud claims are due to be dismissed for failure to adequately plead

scienter.

The PSLRA requires that a private plaintiff "state with

particularity facts giving rise to a strong inference that the defendant

acted with the required state of mind," 15 U.S.C. § 78u-4(b)(2), which is

49

either "intent to deceive, manipulate, or defraud" or "severe recklessness." *Mizzaro*, 544 F.3d at 1238 (quoting *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1282 (11th Cir. 1999)). The Eleventh Circuit describes "severe recklessness" as

> those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it.

*Id.* (quoting *Bryant*, 187 F.3d at 1282 n.18).

"In other words, to adequately plead scienter for a securities-fraud claim, the plaintiff must set forth "'with particularity facts giving rise to a strong inference" that the defendants either intended to defraud investors or were seriously reckless when they made the allegedly materially false or incomplete statements.'" *Damian*, 981 F. Supp. 2d at 1380 (quoting *Bryant*, 187 F.3d at 1282). An inference of scienter is "strong" when it is "more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 314 (2007).

50

To determine whether scienter is well pled, a court "must take into account plausible opposing inferences. *Id.* at 323 (explaining that "[t]he inquiry is inherently comparative"). To do so, the court asks: "When the allegations are accepted as true and taken collectively, would a reasonable person deem the inference of scienter at least as strong as any opposing inference?" *Id.* at 326.

Moreover, although factual allegations may be aggregated to infer scienter, a strong inference of scienter must be alleged with respect to each defendant and each alleged violation. *FindWhat Inv. Grp.*, 658 F.3d at 1296 (quoting *Phillips*, 374 F.3d at 1016).

Defendants challenge Plaintiffs' allegations of scienter on three grounds: (1) Plaintiffs have not adequately pled a strong inference of scienter and instead have only pled motive and opportunity; (2) opposing inferences refute any scienter allegations; and (3) Plaintiffs cannot group-plead scienter.

Plaintiffs attempt to plead scienter by alleging that Defendants were severely reckless in failing to register in operating on both sides of the transactions at issue. As factual support, they contend that

51

Defendants' failure to disclose or mitigate conflicts of interest was for their own financial benefit.[10] Though "personal financial gain may weigh heavily in favor of a scienter inference," *Tellabs, Inc.*, 551 U.S. at 325, "the Eleventh Circuit has rejected the notion that 'allegations of motive and opportunity to commit fraud, standing alone, are sufficient to establish scienter,'" *Jackson Inv. Grp., LLC v. Thomas*, 325 F. Supp. 3d 1334, 1349 (N.D. Ga. 2017) (quoting *Bryant*, 187 F.3d at 1285)). *See also In re Theragenics Corp. Sec. Litig.*, 105 F. Supp. 2d at 1362.

The Court does not find that Defendants' conduct as alleged was an "extreme departure from the standards of ordinary care." *Mizzaro*, 544 F.3d at 1238. Plaintiffs have failed to allege that Defendants knew or should have known that their alleged omissions presented a danger of misleading investors. Nor have they alleged that Defendants knew that they were required to be registered. *Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 634–35 (11th Cir. 2010) (finding that without allegations that the defendants knew employees were not registered

---

[10] Again, Plaintiffs have explained that this financial benefit was "unrelated" to Plaintiffs' best interest. [79] at 26.

brokers when they were required to be, any inference of wrongdoing is at least as compelling as any inference of nonfraudulent intent (citing *Tellabs, Inc.*, 551 U.S. at 314)).

Further, aggregating all relevant facts and reasonable, opposing inferences defeats any strong inference of scienter. *In re Equifax Inc. Sec. Litig.*, 357 F. Supp. 3d at 1232. As discussed above, Urvan retained Defendants for their investment advice and skills in soliciting capital. And Urvan was aware that Defendants were doing the same for other business entities. Plaintiffs have not alleged facts creating a strong inference that it was "highly unreasonable" for Defendants to not disclose to Urvan the complete extent of their relationships with the other portfolio companies. *Mizzaro*, 544 F.3d at 1238; *see also In re Pegasus Wireless Corp. Sec. Litig.*, 657 F. Supp. 2d 1320, 1328 (S.D. Fla. 2009) (finding that to establish scienter under a recklessness standard, it is not enough to show that the defendant was aware of an undisclosed, potentially material fact; rather, a plaintiff must show "that the defendant must have been aware both of [the] materiality [of the undisclosed fact] and that its non-disclosure would likely mislead

investors." (quoting *City of Phila. v. Fleming Cos.*, 264 F.3d 1245, 1260–61 (10th Cir. 2001))).

Moreover, Plaintiffs' amended complaint is devoid of specific facts regarding the times, dates, places, persons responsible, or other details of the alleged fraudulent omissions. *In re Equifax Inc. Sec. Litig.*, 357 F. Supp. 3d at 1233 (noting that while these facts are not required, "their absence from the complaint may be indicative of the excessive generality of the allegations supporting scienter" (quoting *In re Coca-Cola Enters., Inc. Sec. Litig.*, 510 F. Supp. 2d 1187, 1999 (N.D. Ga. 2007))).

Finally, Plaintiffs have not attempted to plead scienter "with respect to each defendant and with respect to each alleged violation." *Phillips*, 374 F.3d at 1017–18. While true that the Eleventh Circuit has not determined whether group pleading survives the PSLRA, unlike for the material misrepresentation or omission element, "case law is clear that scienter must be pled with respect to each defendant." *City of Pompano Beach Gen. Emps.' Ret. Sys. v. Synovus Fin. Corp.*, No. 1:09-cv-1811-JOF, 2011 WL 13130185, at *22 (N.D. Ga. May 19, 2011).

54

Accordingly, "the [C]ourt declines to allow Plaintiffs to 'group-plead' on scienter" for their securities-fraud claims. *Id.*

And the Court does not find that the aggregation of the alleged facts and reasonable inferences drawn therefrom shows that each Defendant had the requisite state of mind. *Id.* (citing *Phillips*, 374 F.3d at 1017–18); *see also Thompson*, 610 F.3d at 635 (finding that the complaint failed to plead scienter for the corporate defendant because corporations have no state of mind of their own, and the complaint failed to plead scienter as to any individual directors or officers of the corporation).

For all the foregoing reasons, Plaintiffs have not sufficiently pled allegations that, taken together, give rise to a strong inference that Defendants acted recklessly in failing to disclose their registration status or aspects of their relationships with the portfolio companies.

### 4. Loss Causation

Plaintiffs' securities-fraud claims are also due to be dismissed for failure to adequately allege loss causation.

55

Under the PSLRA, a private plaintiff has the burden of proving a causal connection between the defendant's misrepresentation and the investment's subsequent decline in value. *Luczak v. Nat'l Beverage Corp.*, 812 F. App'x 915, 920 (11th Cir. 2020) (per curiam) (quoting *Meyer v. Greene*, 710 F.3d 1189, 1195 (11th Cir. 2013)); *see* 15 U.S.C. § 78u-4(b)(4). "Loss causation refers to the link between the defendant's misconduct and the plaintiff's economic loss." *In re HomeBanc Corp. Sec. Litig.*, 706 F. Supp. 2d 1336, 1361 (N.D. Ga. 2010). Thus, a plaintiff must show that "'the untruth was in some reasonably direct, or proximate, way responsible for his loss.'" *In re Coca-Cola Enters., Inc. Sec. Litig.*, 510 F. Supp. 2d at 1203 (quoting *Robbins, v. Koger Props., Inc.*, 116 F.3d 1441, 1447 (11th Cir. 1997)).

Allegations of loss causation in a securities-fraud case need only satisfy Rule 8(a)(2)'s notice pleading requirements. *In re HomeBanc Corp.*, 706 F. Supp. 2d at 1361 (citing *Dura Pharms., Inc.*, 544 U.S. at 346); *see also Luczak*, 812 F. App'x at 920 ("Our circuit has never taken a position on whether the PSLRA's heightened pleading standards apply to allegations of loss causation.").

To adequately plead this element, Plaintiffs must allege that the share price of the security at issue "fell significantly after the truth became known," *Dura Pharms., Inc.*, 544 U.S. at 347, or that the misrepresentation or omission concealed a foreseeable risk that "negatively affected the value of the security" once disclosed, *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 172–73 (2d Cir. 2005). In doing so, Plaintiffs need not allege that Defendants' conduct was the "sole and exclusive cause" of their damages, but they must allege that it was a "substantial" or "significant contributing cause." *FindWhat Inv. Grp.*, 658 F.3d at 1309 (quoting *Robbins*, 116 F.3d at 1447). Thus,

> even if a defendant's misconduct induces the plaintiff to make the investment, if the plaintiff's loss is caused by supervening general market forces or other factors unrelated to the defendant's misconduct that operated to reduce the value of the plaintiff's securities, the plaintiff is precluded from recovery under Rule 10b-5.

*Patel v. Patel*, 761 F. Supp. 2d 1375, 1381 (N.D. Ga. 2011).

At the motion-to-dismiss stage, dismissal is required if the plaintiff offers no facts that distinguish between "losses caused by the defendants' alleged misrepresentations and the intervening events that wreaked havoc on the . . . industry as a whole." *Id.*

57

Defendants argue that not only have Plaintiffs failed to allege a causal connection between Defendants' omissions and their loss, but they have failed to allege that they have sustained any damages at all due to Defendants' conduct. The Court agrees.

Plaintiffs generally allege that Defendants failed to disclose their registration status and their business relationships with their portfolio companies and at the same time advised Plaintiffs to invest in these companies. However, Plaintiffs fail to allege any losses with respect to several investments, namely Simtrol and iTui. And when they do allege losses, they do not provide any facts to support that Defendants' alleged untruths "touched on" these losses, let alone were a significant contributing cause. *Dura Pharms., Inc.*, 544 U.S. at 343 ("To 'touch upon' a loss is not to *cause* a loss, and it is the latter that the law requires." (citing 15 U.S.C. § 78u-4(b)(4))). Moreover, Plaintiffs have not pled any facts that if true would "distinguish" these alleged losses from losses "that were the result of intervening events unrelated to [Defendants'] conduct." *Damian*, 981 F. Supp. 2d at 1384.

In Plaintiffs' response in opposition to Defendants' motion to dismiss, they characterize their damages in the following way:

> [T]he disabling, undisclosed conflicts of interest proximately caused Plaintiffs to engage in securities transactions based upon tainted investment advice and the recommendations made by Defendants. It [sic] also caused Plaintiffs to hold securities they otherwise would not have held.

[79] at 24. However, "[i]f the investment decision is induced by misstatements or omissions that are material and that were relied on by the claimant, but are not the proximate reason for his pecuniary loss, recovery under [Rule 10b-5] is not permitted." *Robbins*, 116 F.3d at 1447 (quoting *Huddleston v. Herman & MacLean*, 640 F.2d 534, 549 (5th Cir. Unit A 1981), *aff'd in part, rev'd in part on other grounds*, 459 U.S. 375 (1983)). Thus, any allegations that Defendants' omissions induced Plaintiffs to make ultimately detrimental investment decisions are not sufficient to show loss causation. *Patel*, 761 F. Supp. 2d at 1381; *see also Lentell*, 396 F.3d at 172 (distinguishing between transaction causation and loss causation).

Even under Rule 8(a)'s minimal pleading standard, Plaintiffs have failed to adequately plead that the alleged omissions or the information

concealed by Defendants were a substantial or significant contributing cause of their damages.

In sum, Plaintiffs have failed to adequately plead a materially misleading omission, a strong inference of scienter, and loss causation. As a result, their claims under §§ 15(c)(1) and 10(b) of the Exchange Act must be dismissed.

### E.    State-Law Claims

#### 1.    Counts VII & IX: GUSA Registration Violations

In Counts VII and IX, Plaintiffs allege that Defendants violated §§ 10-5-30(a), -32(a), and -34 of the Georgia Uniform Securities Act for being required but failing to register as an investment adviser or broker-dealer and for failing to comply with the GUSA's requirements for federally covered investment advisers. Because the Court has found that Plaintiffs have plausibly averred that Defendants were acting as an investment adviser and broker-dealer, they have plausibly stated a claim for Counts VII and IX. *See* O.C.G.A. § 10-5-2(3), -2(17) (giving the same definitions for "broker-dealer" and "investment adviser" as the Exchange Act and the IAA, respectively).

### 2.    Counts VIII & X: GUSA Fraud Claims

In Counts VIII and X, Plaintiffs allege violations of §§ 10-5-51 and -50 of the GUSA, respectively. Section 10-5-51 parallels § 206 of the IAA by prohibiting fraudulent acts by investment advisers, and § 10-5-50 parallels § 10(b) of the Exchange Act and Rule 10b-5 by prohibiting fraudulent conduct in connection with the purchase and sale of securities. Count VIII avers the same conduct that gave rise to Plaintiffs' Count II claim for relief under § 206 of the IAA, and Count X avers the same conduct that gave rise to their Count VI claim for relief under § 10(b) of the Exchange Act and Rule 10b-5.

For reasons already discussed, both claims will be dismissed. *See, e.g., Lopez v. Rica Foods, Inc.*, 277 F. App'x 931, 932 (11th Cir. 2008) (per curiam) (finding that the district court properly dismissed the plaintiffs' federal and state securities-fraud claims for failure to "allege with particularity how Rica's representations were misleading" or "that Rica made the representations with the level of scienter required under the [PSLRA]"); *Patel*, 761 F. Supp. 2d at 1379 (finding that the text of

61

§ 10-5-50[11] mirrors Rule 10b-5 and requires a showing of scienter (citing

*Keogler v. Krasnoff*, 601 S.E.2d 788, 791 (Ga. Ct. App. 2004); *GCA*

*Strategic Inv. Fund, Ltd. v. Joseph Charles & Assocs., Inc.*, 537 S.E.2d

677, 682 (Ga. Ct. App. 2000))); *GCA Strategic Inv. Fund, Ltd.*, 537

S.E.2d at 682 (looking to the elements of a claim under § 10(b) of the

Exchange Act—including a material misrepresentation or omission,

scienter, and proximate causation—for a claim of securities fraud under

Georgia law (citing *Bryant*, 187 F.3d at 1281)).

### 3.      Count XI: Breach of Fiduciary Duty

In Count XI, Plaintiffs allege that Defendants owed fiduciary

duties to Plaintiffs, including duties to report to Plaintiffs the status of

their investments, duties to avoid or mitigate conflicts of interest, and

duties to return to Plaintiffs funds or capital rightfully theirs.

Plaintiffs aver that Defendants breached these fiduciary duties on

numerous occasions, and they provide three examples: (1) Defendants

failed to advise Urvan of Alumni Capital Network's second capital call,

---

[11] The court interpreted § 10-5-12(a)(2) of the GSA, an earlier version of
§ 10-5-50 of the GUSA that used the same language as the current version.

resulting in the fifty-percent reduction of Urvan's initial $150,000 investment; (2) when Alumni Capital Network wound up its operations and retuned residual investment amounts to limited partners, Defendant Opportunity Fund received $75,000 from Alumni Capital Network but Defendants have not returned that capital to Urvan; and (3) Defendant Ventures has failed to return to TVPI the interest and stock payments from ARC Holdings collected on behalf of TVPI prior to ARC Holdings' final liquidity event.[12]

"A claim for breach of fiduciary duty requires proof of three elements: (1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damage proximately caused by the breach." *All Bus. Corp. v. Choi*, 634 S.E.2d 400, 403 (Ga. Ct. App. 2006) (quoting *Bienert v. Dickerson*, 624 S.E.2d 245, 248 (Ga. Ct. App. 2005)).

Defendants argue that the amended complaint fails to allege (1) that all Defendants were in a confidential relationship with all Plaintiffs such that they owed Plaintiffs fiduciary duties; and (2) proximate causation.

---

[12] *See* [67] ¶ 56.

As to the first element, O.C.G.A. § 23-2-58 provides that a confidential, fiduciary relationship arises only "where one party is so situated as to exercise a controlling influence over the will, conduct and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith, such as the relationship between partners, principal and agent, etc." *Yarbrough v. Kirkland*, 548 S.E.2d 670, 673 (Ga. Ct. App. 2001) (quoting O.C.G.A. § 23-2-58).

"Georgia law recognizes that a broker has a fiduciary duty to account to its customer, 'resulting in an obligation to exercise the utmost good faith.'" *Goodwill v. Sun Life Fin. Servs. Co.*, No. 4:11-cv-108-HLM, 2011 WL 13229627, at *6 (N.D. Ga. July 28, 2011) (quoting *E.F. Hutton & Co. v. Weeks*, 304 S.E.2d 420, 422 (Ga. Ct. App. 1983)). The Supreme Court of Georgia has emphasized that a "broker will generally have a heightened duty . . . when recommending an investment . . as to which the broker has a conflict of interest." *Holmes v. Grubman*, 691 S.E.2d 196, 201–02 (Ga. 2010).

64

The Court has found that Plaintiffs have plausibly pled that Defendants acted as an investment adviser and/or broker-dealer. Accordingly, Plaintiffs have adequately pled that Defendants had a controlling influence over Plaintiffs' interests, specifically with respect to the Alumni Capital Network and ARC Holdings transactions, such that they owed Plaintiffs fiduciary duties. *See Goodwill*, 2011 WL 13229627, at *7 (applying Georgia's laws for brokers to the issue of whether an investment adviser owed fiduciary duties but finding that the investment adviser did not breach any duty where the plaintiff's investments were discretionary and no circumstances giving rise to heightened fiduciary duties existed); *cf. Klopfenstein v. Deutsche Bank Sec., Inc.*, No. 1:14-cv-278-TCB, 2014 WL 12521383, at *8 (N.D. Ga. May 13, 2014) (finding no fiduciary relationship between investor and investment bank where the complaint's averments described only an "arm's-length relationship").

Moreover, Plaintiffs expressly allege that Defendant Ventures was in a contractual, principal-agent relationship with TVPI, creating a fiduciary relationship between those parties.

65

The Court finds that Plaintiffs have failed to plausibly allege that they suffered damages proximately caused by any "numerous," unenumerated breaches of fiduciary duties. [67] ¶ 128. However, the Court finds that at this stage, Plaintiffs have plausibly alleged damages proximately caused by the three breaches specifically stated in the amended complaint. Accordingly, Defendants' motion to dismiss will be denied as to those alleged breaches.

### 4. Count XII: Conversion

In Count XII, Plaintiffs allege that Defendants have improperly converted their property, namely Urvan's 30,000 shares of iTui stock, Urvan's $75,000 that Defendants received from Alumni Capital Network in 2015, and the shares and cash payments that Defendants received from ARC Holdings prior to its final liquidity event.

Defendants argue that the conversion claim is barred by its four-year statute of limitations. Plaintiffs counter that Defendants did not breach their confidential relationship with Plaintiffs until they filed a lawsuit on December 17, 2017, and accordingly that the conversion of

66

the listed assets were not "unauthorized" until that date. Defendants

offer no reply.

"[C]onversion consists of an unauthorized assumption and

exercise of the right of ownership over personal property belonging to

another, in hostility to his rights; an act of dominion over the personal

property of another inconsistent with his rights; or an unauthorized

appropriation." *Williams v. Nat'l Auto Sales, Inc.*, 651 S.E.2d 194, 196

(Ga. Ct. App. 2007) (quoting *Corbin v. Regions Bank*, 574 S.E.2d 616,

621 (Ga. Ct. App. 2002)). "Any distinct act of dominion and control

wrongfully asserted over another's personal property, in denial of his

right or inconsistent with his right, is a conversion of such property." *Id.*

(quoting *Taylor v. Powertel, Inc.*, 551 S.E.2d 765, 769 (Ga. Ct. App.

2001)). When the defendant has lawfully come into possession of the

plaintiff's property, the defendant has exercised unauthorized dominion

or control over the property once the plaintiff demands its return and is

refused. *Id.* (citations omitted).

Under O.C.G.A. § 9-3-32, actions for the recovery of damages for

conversion of personal property must be brought within four years after

the right of action accrues. The right of action accrues "when the plaintiff could first have maintained her action to a successful result." *Chep USA v. Mock Pallet Co.*, 138 F. App'x 229, 237 (11th Cir. 2005) (per curiam) (quoting *Travis Pruitt & Assocs., P.C. v. Bowling*, 518 S.E.2d 453, 454 (Ga. Ct. App. 1999)). Generally, this is the date of the conversion. *Logan v. Tucker*, 480 S.E.2d 860, 862 (Ga. Ct. App. 1997) (citing *Harper v. Jones*, 118 S.E.2d 279, 280 (Ga. Ct. App. 1961)).

Plaintiffs do aver that they demanded a return of their property from Defendants, but they do not aver when they made these demands. However, the amended complaint alleges that Urvan did not learn of his right to the Alumni Capital Holdings capital until November 2019, and that Plaintiffs learned that ARC Holdings had made interest payment to Ventures around August 2019.

Drawing all reasonable inferences in the light most favorable to Plaintiffs, which the Court is bound to do at this point, the Court finds that Plaintiffs have plausibly pleaded that Defendants exercised unauthorized dominion over their property at some point beginning on December 17, 2017 at the earliest, when they filed the Cobb County

68

Case and thereby created an adverse relationship with Plaintiffs. Thus, Defendants' motion to dismiss will be denied.

### 5. Count XIII: Accounting

Finally, Plaintiffs seek an equitable accounting pursuant to O.C.G.A. § 23-2-70(2) due to the lengthy relationship between the parties and the numerous complicated and intricate transactions involved. Defendants move to dismiss this claim only on the grounds that it requires the Court to make "unwarranted deductions of facts or legal conclusions" in violation of Rule 12(b)(6). [75-1] at 9, 28 (quoting *Oxford Asset Mgmt., Ltd.*, 297 F.3d at 1188).

"In Georgia, an equitable accounting is 'not a proceeding to which every litigant has as a right' and should be 'granted only in carefully prescribed and determined circumstances.'" *Ralls Corp. v. Huerfano River Wind, LLC*, 27 F. Supp. 3d 1303, 1330 (N.D. Ga. 2014) (quoting *Herring v. Standard Guar. Ins. Co.*, 232 S.E.2d 544, 545 (Ga. 1977)). "One such circumstance is 'where accounts are complicated and intricate.'" *Id.* (quoting O.C.G.A § 23-2-70(2)). However, this is only appropriate where there is no adequate remedy at law. *Id.* (citing

*Faircloth v. A.L. Williams & Assocs., Inc.*, 465 S.E.2d 722, 723 (Ga. Ct. App. 1995)).

Here, Plaintiffs have pled that the accounts at issue are particularly complicated. However, they aver in a conclusory fashion that the complicated nature of the parties' relationship may render an adequate remedy at law nonexistent, but they do not allege facts supporting this conclusion. Moreover, they have not averred that they will be unable to determine any amounts owed through discovery. *See id.*; *Wells Fargo Bank v. Crowley*, No. 1:13-cv-1427-CAP, 2014 WL 11370437, at *6 (N.D. Ga. Feb. 20, 2014) (citing *nVision Global Tech. Sols., Inc. v. Cardinal Health 5, LLC*, 887 F. Supp. 2d 1240, 1276 (N.D. Ga. 2012)). Accordingly, the claim will be dismissed.

## F.    Motion for a More Definite Statement

Defendants move for a more definite statement of the allegations in the amended complaint for the remaining claims. Federal Rule of Civil Procedure 12(e) permits a party to "move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably

prepare a response." Importantly, "[t]he motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired." FED. R. CIV. P. 12(e). In the alternative, Defendants request an order striking the ambiguous allegations in the amended complaint.

After consideration of the parties' briefings, the Court will deny Defendants' motion.

### G.   Motion to Stay Pursuant to *Colorado River*

Defendants rely on the *Colorado River* abstention doctrine to seek a stay of these proceedings until resolution of the Cobb County Case. The Supreme Court set forth this abstention doctrine in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976):

> The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest.

*Id.* at 813 (citing *Cnty. of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188–89 (1959)).

Generally, the existence of a parallel state court proceeding concerning the same matter is not a bar to the exercise of federal jurisdiction. *McClellan v. Carland*, 217 U.S. 268, 282 (1910). This is due to the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given to them." *Colo. River*, 424 U.S. at 817.

This Court's first duty is to determine whether the *Colorado River* doctrine is applicable. Next, the Court will determine whether abstention is appropriate.

### 1.    Whether *Colorado River* Is Applicable

The Eleventh Circuit has held that the doctrine is applicable where the "federal and state proceedings involve substantially the same parties and substantially the same issues." *Ambrosia Coal & Constr. Co. v. Pages Morales*, 368 F.3d 1320, 1330 (11th Cir. 2004) (rejecting a proposed rule that *Colorado River* abstention is permissible only when the relevant federal and state cases share identical parties, issues, and requests for relief).

72

"There is no clear test for deciding whether two cases contain substantially similar parties and issues." *Acosta v. James A. Gustino, P.A.*, 478 F. App'x 620, 622 (11th Cir. 2012) (per curiam). But "if there is any substantial doubt about whether two cases are parallel the court should not abstain." *Id.* (citing *Huon v. Johnson & Bell, Ltd.*, 657 F.3d 641, 646 (7th Cir. 2011)). Moreover, "the decision to invoke *Colorado River* necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the case." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983) ("When a district court decides to dismiss or stay under *Colorado River*, it presumably concludes that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties. If there is any substantial doubt as to this, it would be a serious abuse of discretion to grant the stay . . . ." (citations omitted)).

When considering the parallel nature of both cases, the Court may "review[] the parties' filings with respect to the [state] case." *Georgia v.*

73

*U.S. Army Corps of Eng'rs*, 223 F.R.D. 691, 697 (N.D. Ga. 2004), *aff'd*, 144 F. App'x 850 (11th Cir. 2005) (per curiam).

Although the parties in both this action and the Cobb County Case are not identical, they are substantially similar. Gunbroker.com, LLC; GB Investments, Inc.; and IA Tech, LLC—entities affiliated with Urvan—are defendants in the Cobb County Case but not in this action; Gasgarth, Zwitter, and Freischlag are not named as individual defendants in this action; and with the exception of Triton Value Partners, the remaining eight corporate or partnership entities that are Defendants in this action are not parties in the Cobb County Case.

However, Plaintiffs admit that the federal Defendants share common principals and that Gasgarth, Zwitter, and Freischlag are those principals. In this action, they allege the same investment activity and conduct by Defendants that they allege in the Cobb County Case by the individuals through their corporate entities. *See Corestates, Inc. v. Phillips*, No. 1:16-cv-1170-ODE, 2016 WL 9454438, at *3 (N.D. Ga. Aug. 5, 2016) (finding that the cases involved substantially the same parties

74

where the individual defendant in the state action was the majority shareholder and CEO of the corporate plaintiffs in the federal action).

The Eleventh Circuit has found state and federal cases to be substantially similar even where several of the defendants in the federal case were not parties to the state case. *Ambrosia Coal*, 368 F.3d 1330; *see also Georgia*, 223 F.R.D. at 697 ("[T]he parallel nature of two suits is not defeated by additional parties." (citing *Interstate Material Corp. v. City of Chi.*, 847 F.2d 1285, 1288 (7th Cir. 1988))). It has also found cases to be substantially similar where the interests of the parties were "inextricably linked," as is the case here. *Baker v. Warner/Chappell Music*, 759 F. App'x 760, 763 (11th Cir. 2018) (per curiam).

Moreover, Urvan and TVPI's claims in the two cases are substantially similar with the primary exception that the registration-related claims brought in federal court are not brought in the Cobb County Case.

The conversion claims in both cases seek to recover the identical funds allegedly derived from business dealings with iTui, Alumni

75

Capital Network, and ARC Holdings. *See CCB, LLC v. BankTrust*, 438 F. App'x 833, 834 (11th Cir. 2011) (per curiam) (affirming the district court's decision to stay the when the state court action involved the same financial transaction). The conversion claim in the Cobb County Case alleges an additional act of conversion by Gasgarth, Freischlag, and Zwitter not alleged in this action: the conversion of over one million dollars that they received by wire transfer.

Both cases plead breach of fiduciary duty claims, pointing to the obligations that Gasgarth, Freischlag, and Zwitter or their controlled entities owed to Urvan and TVPI. Both the federal amended complaint and the Cobb County counterclaim list the same three occasions where these fiduciary duties were breached: the second capital call for Alumni Capital Network; the failure to return to Urvan the capital he invested in Alumni Capital Network; and the retained interest payments and stock from ARC Holdings that are owed to TVPI under the promissory note. Notably, the breach-of-fiduciary-duties claim in the Cobb County Case pleads additional examples of breach not included in the federal

amended complaint relating to Gasgarth, Freischlag, and Zwitter's duties owed as officers of TVPI.[13]

For these reasons, the resolution of the Cobb County Case would adequately and completely resolve the issues between the parties that Plaintiffs deem to be the "[m]ore important" issues. [67] ¶ 3.

It is less likely that resolution of the state court action would resolve Plaintiffs' registration-related claims brought under the IAA, the Exchange Act, and §§ 10-5-30(a), -32(a), and -34 of the GUSA. Urvan and TVPI do not explicitly allege these registration violations in the Cobb County Case, in part because the state court counterclaims do not identify the provisions of the GUSA that the plaintiffs allegedly violated. But within their claim for Georgia securities violations, Urvan and TVPI do allege that Gasgarth, Freischlag, and Zwitter performed investment activities without being associated with a registered broker-dealer firm.

---

[13] The Court also notes that though it will dismiss Plaintiffs' securities-fraud claims, those claims are based on the same timeframe and same transactions involving Simtrol, Exchange Boulevard, Alumni Capital Network, iTui Telecom, and ARC Holdings as the securities violations and fraud claims in the Cobb County Case. The averments in Plaintiffs' amended complaint largely repeat the language in their Cobb County counterclaim for violations of the Georgia Securities Act.

Nevertheless, both cases are attempting to litigate whether the behavior of the corporate and individual defendants were proper when it came to their investment recommendations and fiduciary duties owed to Urvan and TVPI. *Corestates, Inc.*, 2016 WL 9454438, at *3. Moreover, the Eleventh Circuit has affirmed a district court's decision to stay where the state court proceedings might only "substantially limit" the federal court claims. *Kaplan v. Kaplan*, 524 F. App'x 547, 548 (11th Cir. 2013) (per curiam).

In short, the two cases involve the same investment activity within the same timeframe by the same parties. Accordingly, the Court finds that the two cases are sufficiently parallel such that the *Colorado River* doctrine is implicated.

### 2.    Whether Abstention Is Appropriate

Once the threshold issue of whether the cases involve substantially the same parties and issues is determined, a federal court must consider if "'exceptional' circumstances" exist that would justify declining to exercise jurisdiction. *Ambrosia Coal*, 368 F.3d at 1328 (quoting *Colo. River*, 424 U.S. at 818). The Eleventh Circuit has

78

provided six factors for evaluating this standard: "(1) whether one of the courts has assumed jurisdiction over property, (2) the inconvenience of the federal forum, (3) the potential for piecemeal litigation, (4) the order in which the fora obtained jurisdiction, (5) whether state or federal law will be applied, and (6) the adequacy of the state court to protect the parties' rights." *Id.* at 1331.

The Supreme Court has stated that the decision of whether to stay a federal action because of parallel state-court litigation "does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone*, 460 U.S. at 16; *see also Moorer v. Demopolis Waterworks & Sewer Bd.*, 374 F.3d 994, 997 (11th Cir. 2004).

Here, the first two factors do not favor abstention. Neither proceeding is an in rem proceeding; thus, neither court has obtained jurisdiction over any property. *Jackson-Platts v. Gen. Elec. Cap. Corp.*, 727 F.3d 1127, 1141 (11th Cir. 2013) ("[T]his factor applies only where there is a proceeding in rem." (citing *Ambrosia Coal*, 368 F.3d at 1332)).

79

When considering the convenience of the forum, the analysis should focus primarily on "the physical proximity of the federal forum to the evidence and witnesses." *Ambrosia Coal*, 368 F.3d at 1332 (citing *Am. Bankers Ins. Co. of Fla. v. First State Ins. Co.*, 891 F.2d 882, 885 (11th Cir. 1990)). The federal forum encompasses where the state forum is located; hence, the federal forum and the state forum are equally convenient. *See Jackson-Platts*, 727 F.3d at 1141 (finding that this factor "cuts against abstention" where the forums are equally convenient (citations omitted)).

The Eleventh Circuit has held that the third factor "does not favor abstention unless the circumstances enveloping those cases will likely lead to piecemeal litigation that is abnormally excessive or deleterious." *Ambrosia Coal*, 368 F.3d at 1333.

Here, the facts and legal issues involving the fiduciary duty and conversion claims are nearly identical, risking duplicative efforts and possibly inconsistent results. The same is true for the facts and issues involving the investment advisory relationships between parties. But inconsistent results alone are not enough to favor abstention under this

factor. *Id.* Though allowing this action to proceed will certainly result in duplicative efforts, there is no indication that the risk of piecemeal litigation poses a significantly greater waste or danger here than it does in most federal cases with concurrent state counterparts. *Id.* Moreover, litigation is "inevitably piecemeal" because this Court has exclusive jurisdiction over several of Plaintiffs' claims. *Jackson-Platts*, 727 F.3d at 1142 (citing *Am. Mfrs. Mut. Ins. Co. v. Edward D. Stone, Jr. & Assoc.*, 743 F.2d 1519, 1525 (11th Cir. 1984)). Thus, "this factor favors abstention, but not strongly so." *Barone v. Wells Fargo Bank, N.A.*, 709 F. App'x 943, 950 (11th Cir. 2017).

The fourth factor strongly favors abstention. The Supreme Court has clarified that this factor should not be "measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Moses H. Cone*, 460 U.S. at 21.

The parties in the Cobb County Case have undertaken extensive discovery, producing tens of thousands of documents. Urvan and TVPI have sought production of eighty categories of documents from eight of

the nine federal Defendants in the state action. The court has also held

at least three discovery-related hearings and granted several motions to

compel, some of which were handled by a special master. It appears

that all witnesses have been deposed except for experts, and the parties

have engaged in non-party discovery. On December 18, 2020, Urvan

and TVPI filed motions for summary judgment. On January 27, 2021,

the court held a hearing on those motions.

Though the deadlines in the Cobb County Case have been

extended several times, this is still a substantial difference from the

progress in this case, where no discovery has occurred.

The fifth factor does not favor abstention. Federal law and Georgia

law will govern the claims in this action, and the remaining Georgia

claims do not involve novel questions of state law. *See Jackson-Platts*,

727 F.3d at 1143 ("[T]his factor favors abstention only where the

applicable state law is particularly complex or best left for state courts

to resolve." (citing *Am. Bankers*, 891 F.2d at 886)).

The final factor is neutral. The Eleventh Circuit has held that

"[t]his factor will only weigh in favor or against abstention when one of

82

the fora is inadequate to protect a party's rights," *Ambrosia Coal*, 368 F.3d at 1334 (citing *Noonan S., Inc. v. Cnty. of Volusia*, 841 F.2d 380, 382 (11th Cir. 1988)), and there is no reason that either court should not be able to fully protect the parties' rights here.

After a careful balancing of the above factors, the Court finds that this case presents the exceptional circumstances necessary for abstention, particularly given the progress of the Cobb County Case. Accordingly, a stay of this action is warranted.

## IV. Conclusion

For the foregoing reasons, Defendants' motion [75] to dismiss is granted in part and denied in part. Counts II, IV, V, VI, VIII, X, and XIII of the amended complaint are dismissed. Count I is dismissed to the extent that it seeks any remedy other than the rescission of any investment advisers contracts.

Defendants' motion [74] for a more definite statement is denied.

Defendants' motion [34] to stay is granted. This matter is hereby stayed until the resolution of the Cobb County Case. The parties are

directed to file a status report updating the Court on the proceedings in the Cobb County Case within ninety days.

IT IS SO ORDERED this 25th day of March, 2021.

_____
Timothy C. Batten, Sr.
United States District Judge