# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| STEVE URVAN AND TVP INVESTMENTS, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>PARTNERS OPPORTUNITY FUND I, L.P.; TRITON OPPORTUNITY FUND MANAGER, LLC; TVP VENTURES FUND MANAGER, LLC; TVP VENTURES I, L.P.; TRITON HOLDINGS INTERNATIONAL, INC.; TRITON ACCELERATOR FUND, LLC; TRITON OPPORTUNITY PLEDGE FUND; AND TRITON BUSINESS DEVELOPMENT SERVICES, INC. N/K/A TRITON VALUE PARTNERS, LLC,<br><br>Defendants. | Civil Action No.<br>1:20-cv-00153-VMC |

**ORDER**

Before the Court is the Motion of Defendants Triton Value Partners, LLC, TVP Ventures, LLC, Triton Value Partners Opportunity Fund I, L.P., Triton Opportunity Fund Manager, LLC, TVP Ventures Fund Manager LLC, TVP Ventures I, L.P., and Triton Holdings International, Inc., on their behalf and nominally on behalf of Triton Accelerator Fund, LLC, and Triton Opportunity Pledge Fund (collectively, "Defendants") for Summary Judgment ("Motion," Doc.

147). Plaintiffs Steve Urvan and TVP Investments, LLC (collectively, "Plaintiffs") filed a Response in Opposition to the Motion ("Response," Doc. 154). Defendants filed a Reply in Support of the Motion ("Reply," Doc. 161).

For the reasons that follow, the Court will grant the Motion.

## Background

In or around 2006, Mr. Urvan became acquainted with a business called Triton Business Development Services, LLC. (Declaration of Steven Frank Urvan dated Feb. 22, 2023 ("Urvan Decl." ¶ 6, Doc. 157-1))[1]. At some point, the business was renamed Triton Value Partners, LLC. (*Id.*).

As for the remaining Defendant entities, Defendants distinguish them as follows: Defendant TVP Ventures, LLC ("TVP Ventures") primarily functions to hold "earned equity" that Triton Value Partners, LLC or its principals received for advising clients pursuant to a deal between Plaintiffs and Triton Value Partners, LLC and its principals. (Declaration of Donald B. Gasgarth dated Dec. 20, 2022 ("Gasgarth Decl.") ¶ 9, Doc. 148 at 5).[2] TVP Ventures has maintained its own bank account, assets, liabilities, and activities separate and apart from the other Defendant entities. (*Id.*). Defendant Triton Opportunity Fund I, L.P. ("Opportunity Fund") and its general partner, Defendant Triton Opportunity Fund Manager,

---

[1] A redacted version of the Urvan Declaration was filed at Doc. 163-1.

[2] A redacted version of the Gasgarth Declaration was filed at Doc. 162.

LLC ("Opportunity Fund Manager"), function to make specific pass-through investments, such as the Alumni Capital Network investment in which Urvan participated. (*Id.* ¶ 10). Opportunity Fund maintained its own bank account separate and apart from other Defendants, as well as its own assets, liabilities, and activities separate and apart from the other Defendant entities. (*Id.*). Opportunity Fund Manager has acted as general partner for Opportunity Fund, but it does not have a bank account because it has not received compensation for the administrative functions it has performed. (*Id.*).

In contrast to the foregoing, Plaintiffs contend that "all of the business activities were operating under the umbrella of Triton and TVP Ventures." (Urvan Decl. ¶ 19). Plaintiffs assert that "[r]egardless of whether the communication related to the Opportunity Fund or forwarded some material about another fund such as the Accelerator Fund or the Pledge Fund, the communication was almost always sent under the Triton email domain, but occasionally under the TVP Ventures moniker." (*Id.*). In addition, the employees and principals of these entities (or proposed entities) were the same people and the business addresses were exactly the same at all times. Moreover, as Plaintiffs point out, common expenses, like rent, utilities and office supplies, were paid by Triton Value Partners, LLC without regard to the expenses of each entity. (30(b)(6) Deposition

of Triton Value Partners, LLC by Donald B. Gasgarth dated Nov. 15, 2022 ("Triton Dep.") at 20:16–21:25, Doc. 158-1).

The Parties do agree that Triton Accelerator Fund, LLC and Triton Opportunity Pledge Fund do not exist. (SMF ¶ 3; RSMF ¶ 3). Moreover, Plaintiffs agree that Triton Holdings International, Inc does not appear to have been part of the aforementioned business activities and acknowledge that Triton Holdings International, Inc. should be dismissed. (Resp. at 2 n.1). Moreover, the Parties agree that from 2006 to the present, none of the foregoing entities were registered as either investment advisers or broker-dealers. (SMF ¶ 2; RSMF ¶ 2).

Acknowledging the foregoing factual disputes has led to some definitional difficulty. Defendants defined "Triton" to refer to Triton Value Partners, LLC. Plaintiffs, likely in furtherance of their theory of the case, have defined all of the Defendant entities as "Triton" and referred to them by that name collectively throughout their materials, with the exception of the occasional reference to TVP Ventures. While this is certainly Plaintiffs' prerogative, it puts the onus on the Court to parse their briefing when mapping events onto Defendants' briefing. Mindful that "the alter-ego inquiry is a question of fact that the jury should ordinarily decide," *Brown v. Advantage Eng'g, Inc.*, 732 F. Supp. 1163, 1167 (N.D. Ga. 1990) (citing *Najran Co. v. Fleetwood Enters., Inc.*, 659 F.Supp. 1081, 1096 (S.D. Ga. 1986)), but also that the Court should view the evidence in the light most

4

favorable to Plaintiffs as the non-movants, the Court will adopt the Plaintiffs' practice of using "Triton" in a general sense to refer to the relevant Defendant-entity except where noted otherwise. This is for convenience only and is by no means a determination that the corporate veil is pierced as to Defendants.

Between 2006 and 2009, Mr. Urvan discussed with Triton a potential contract pursuant to which Triton would provide services to him and his businesses regarding investment opportunities. (*Id.* ¶ 8). In addition, for various business reasons including as a vehicle for making the contemplated investments, Triton advised Mr. Urvan to create TVP Investments, LLC ("TVPI"). Mr. Urvan authorized the creation of TVPI and, directly or indirectly, owns 100% of the membership interests in TVPI. (*Id.* ¶ 3, 9). The parties dispute whether Plaintiffs and Triton formally reached an agreement to compensate Triton with a 10% interest in TVPI in exchange for Triton's services. This is the subject of a pending case in the Superior Court of Cobb County. (See Order of March 25, 2021 ("MTD Order") at 5–6).

Based on solicitation materials that Mr. Urvan received from Triton, he invested in a number of companies. First, in October 2006, he invested $100,000.00 in ExchangeBoulevard.com, Inc. (Defs.' Statement of Material Facts ("SMF") ¶ 9, Doc. 147-2; Pls.' Resp. to SMF ("RSMF") ¶ 9, Doc. 155). Second, in February 2007, Mr. Urvan made an investment in Simtrol, Inc. for $100,000.00. (SMF ¶ 11; RSMF

5

¶ 11). Third, in March 2009, TVPI also made an investment of $250,000.00 in the form of a loan to Simtrol as a part of a Master Convertible Promissory Note. (SMF ¶ 13; RSMF ¶ 13). Fourth, Mr. Urvan also contends he invested in another company, but he has been unable to confirm the amount of that investment. (Urvan Decl. ¶ 23).

Fifth, and finally, on or about October 29, 2010, TVPI and sixteen other investors executed subscription agreements and purchased participating interests in in a Master Convertible Promissory Note ("Master Note") for $837,888.00 issued by ARC Holdings, Inc. (SMF ¶ 22; RSMF ¶ 22). The maturity date on the Master Note with ARC Holdings was extended multiple times, and in return, ARC Holdings agreed to issue "penalty shares" to TVP Ventures as agent for the investors on the Master Note. (SMF ¶ 25; RSMF ¶ 25).

Plaintiffs brought this civil action on January 10, 2020. (Doc. 1). After the Court's prior MTD Order, Plaintiffs' remaining claims include: (1) four counts (Counts I, III, VII, and IX) alleging Defendants violated federal and state securities laws by failing to register as investment advisors or broker-dealers, (2) one count (Count XII) for conversion based on Defendants' unauthorized possession of, among other things, 30,000 shares of iTui Telecom, Inc. stock, and (3) one count (Count XI) for breach of fiduciary duty arising from (a) Defendants' failure to advise Mr. Urvan of a second capital call for a so-called Alumni Capital Network,

resulting in the fifty-percent reduction of Mr. Urvan's initial $150,000 investment; (b) Defendants' failure to return $75,000 received when Alumni Capital Network wound up its operations and returned residual investment amounts to limited partners; and (c) Defendant TVP Ventures' failure to return to TVPI the interest and stock payments from ARC Holdings collected on behalf of TVPI prior to ARC Holdings' final liquidity event. Defendants seek summary judgment on all these claims, or in the alternative, on the federal claims only with state claims dismissed without prejudice pursuant to 28 U.S.C. § 1367(c).

## Discussion

Defendants' primary argument is that Plaintiffs' securities laws claims are barred by the applicable statutes of limitations. Defendants also contend that they are not investment advisors or broker dealers as a matter of law. The Court need only reach the first of these arguments, as it is dispositive.

**I.**     **Statute of Limitations**

Plaintiffs bring securities claims under both the Georgia Uniform Securities Act ("GUSA"), O.C.G.A. § 10-5-58 (Counts VII and IX) and the Federal Investment Advisors Act ("IAA"), 15 U.S.C. §§ 78o, 80b-3 (Counts I and III). Defendants contend that a two-year statute of limitations applies to the GUSA claims, citing O.C.G.A. § 10-5-58(j)(1). Defendants also contend that the two-year statute of limitations applies to the IAA claims, because those statutes are silent on

7

limitations and the Court must therefore "borrow the most appropriate statute of limitations of the forum state." (Br. Supp. Mot. at 5) (citing *Friedlander v. Troutman, Sanders, Lockerman & Ashmore*, 788 F.2d 1500, 1502 (11th Cir. 1986)). In the alternative, Defendants offer out of circuit authority for the proposition that the IAA claims are subject to the "'one/three year period applicable to various provisions of the 1933 and 1934 [Securities Exchange] Acts,' which require 'that suit must be commenced within one year of the discovery of the claim and at least three years after the date of injury.'" (*Id.*) (citing *Kahn v. Kohlberg, Kravis, Roberts & Co.*, 970 F.2d 1030, 1038-38 (2d Cir. 1992)).

As to the GUSA claims, Plaintiffs do not appear to contest that a two-year statute of limitations applies to bare failure-to-register claims, but assert that Count III of the complaint also raises claims for investment advice fraud, which is subject to a limitation period of "within the earlier of two years after discovery of the facts constituting the violation or five years after the violation occurred." O.C.G.A. § 10-5-58(j)(2).[3] But as Defendants correctly point out, the Court (Batten,

---

[3] Plaintiffs also argue that the statute of limitations in O.C.G.A. § 10-5-58(j) only applies to actions under subsection (b) of that section, and therefore should not apply to actions for investment advice fraud under subsection (f), but in context the subsection appears to apply to subjection (f) claims as well:

> (j)A person may not obtain relief under subsection (b) of this Code section:
> . . .

8

C.J.) has already dismissed Plaintiffs' GUSA securities fraud claims. (MTD Order at 60). Plaintiffs' remaining GUSA claims arise from a failure to register, which is subject to the flat two-year statute of limitations set forth above.[4]

As for the IAA claims, Plaintiffs contend that the general securities fraud statute of limitations under the Sarbanes-Oxley Act of 2022, 28 U.S.C. § 1658(b), applies. That section provides as follows:

> **(b)** Notwithstanding subsection (a), a private right of action that involves a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws, as defined in section 3(a)(47) of the Securities Exchange Act of 1934 (15 U.S.C. 78c(a)(47)), may be brought not later than the earlier of--

---

> (2) Other than for a violation of Code Section 10-5-20 or for a violation of subsection (c) or (f) of this Code section [i.e., (A) a claim under subsection (b) other than for a violation of section 10-5-20, (b) for a violation of subsection (c), or for a violation of subsection (f)], unless the action is instituted within the earlier of two years after discovery of the facts constituting the violation or five years after the violation occurred.

O.C.G.A. § 10-5-58.

[4] Plaintiffs then confusingly argue that "[a]s to Count VII, the provision applies to Plaintiffs, because Plaintiffs were purchasers, but Plaintiffs did not discover the facts and circumstances that indicated that Triton was acting as a broker-dealer until February 2019." (Resp. at 16). The Court struggled to understand exactly what Plaintiffs meant by this paragraph, but as Defendants point out, it appears that "Plaintiffs erroneously conflate their claims in Count VII with their claims in Count III." (Reply at 9 n.8).

> **(1)** 2 years after the discovery of the facts constituting the violation; or
>
> **(2)** 5 years after such violation.

28 U.S.C. § 1658(b). But the Court agrees with Defendants that failing to register as a broker-dealer or investment advisor does not necessarily "involve[] a claim of fraud, deceit, manipulation, or contrivance." Instead, for the failure to register counts, either Georgia's two-year or the Securities Exchange Act's one/three-year deadline apply for the reasons that Defendants gave, and the Court need not decide which, because all of Plaintiffs' failure-to-register claims are barred under either deadline.

First, as to the GUSA failure-to-register claims, the statute of limitations began running from the date of the last transaction, which indisputably took place in 2010. *See* O.C.G.A § 10-5-58(d) ("A person acting as a broker-dealer or agent that **sells or buys a security** in violation of subsection (a) of Code Section 10-5-30 [requiring registration] . . . is liable to the customer."), (e) ("A person acting as an investment adviser or investment adviser representative that **provides investment advice for compensation** in violation of subsection (a) of Code Section 10-5-32 [requiring registration] . . . is liable to the client.") (emphasis added); *see also Curry v. TD Ameritrade, Inc.*, 1:14-CV-1361-LMM, 2015 WL 11251449, at *18 (N.D. Ga. June 30, 2015) ("The Court finds that the two-year statute of limitations for registration claims under the GUSA and the GSA began to run from the date

Plaintiffs purchased the securities at issue."). The Court further finds that GUSA's explicit tolling provision for fraud-based claims precludes the possibility of tolling for non-fraud-based claims such as for failing to register. *Abdulkadir v. State*, 610 S.E.2d 50, 52 (Ga. 2005) ("Georgia law provides that the express mention of one thing in an Act or statute implies the exclusion of all other things."). The Complaint was filed in 2020, well more than two years after the date of the last transaction. (Doc. 1). Thus, these claims are barred.

Second, as to the federal claims, the Court finds persuasive the Second Circuit's opinion in *Kahn*, that the implied cause of action for rescission of an unregistered investment advisor's contract under *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 24 (1979) runs from entry into the contract because the advisor "harms the purchaser of his investment advice at the time that he enters into a contract that commits the purchaser to pay for the advice." 970 F.2d at 1041. As these implied causes of action are the only federal securities claims that survived the MTD Order, and as the conduct which triggered these claims necessarily arose on or before 2010 (the last transaction at issue), they are likewise barred.

## II.  Remaining State Law Claims

As noted above, the parties are engaged in litigation in the Superior Court of Cobb County. "Urvan and TVPI's claims in the two cases are substantially

similar with the primary exception that the registration-related claims brought in federal court are not brought in the Cobb County Case." (MTD Order at 75). Pursuant to 28 U.S.C. § 1367(c)(3), the Court "may decline to exercise supplemental jurisdiction over a claim . . . [if] the district court has dismissed all claims over which it has original jurisdiction." The Court will decline to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims because Plaintiffs already have an adequate state law forum where they have brought these claims.

## Conclusion

For the above reasons, it is

**ORDERED** that Defendants' Motion for Summary Judgment (Doc. 147) is **GRANTED.** The Clerk is directed to enter a judgment dismissing Counts I, II, III, IV, V, VI, VII, VIII, IX, X, and XIII of Plaintiffs' Amended Complaint with prejudice and dismissing Counts XI and XII without prejudice.

**SO ORDERED** this 17th day of April, 2023.

_____
Victoria Marie Calvert
United States District Judge